UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

**Eastern District of Kentucky**
**F I L E D**

AUG 2 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-463-GWU

GLENDA S. MILLER,                                    PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,            DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of the unfavorable

portion of an administrative decision on her applications for Disability Insurance

Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently

before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity?
   If yes, the claimant is not disabled. If no, proceed to Step 2.
   See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical
   or mental impairment(s)? If yes, proceed to Step 3. If no, the
   claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any
   impairment(s) significantly limiting the claimant's physical or
   mental ability to do basic work activities? If yes, proceed to

1

Miller

Step 4.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.     Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.     Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.     See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.     Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.     If no, proceed to Step 7.     See 20 C.F.R. 404.1520(e), 416.920(e).

7.     Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.     See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

> First, we examine whether there is objective medical evidence of an
> underlying medical condition.  If there is, we then examine:  (1)
> whether objective medical evidence confirms the severity of the alleged
> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be

remedied by treatment. The Sixth Circuit has held that such an impairment will not

serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would

have regained his residual capacity for work if he had followed his doctor's

instructions to do something or if the instructions were merely recommendations.

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,

1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before

it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.

1987). Further, a failure to seek treatment for a period of time may be a factor to be

considered against the plaintiff, Hale v. Secretary of Health and Human Services,

816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d

6

279, 282 (6th Cir. 1985).   Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.   Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Glenda S. Miller, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative disc disease/sprain and non-obstructive coronary artery disease.  (Tr. 26).  Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that,  while the plaintiff was "disabled" as of her 55th birthday on November 4, 2002, she retained the residual functional capacity to perform a significant number of jobs existing in the economy prior to that time and, therefore, was not entitled to benefits.  (Tr. 28-33).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether an individual of the plaintiff's age, education, and work experience could perform any jobs if she were limited to "light" level exertion, could never climb ladders or ropes, could occasionally stoop, crouch, kneel, and crawl, and would have to avoid hazardous machinery, temperature extremes, and concentrated exposure to fumes, odors, dust, gases, smoke, and chemicals.  (Tr. 734).  The VE responded that, while such a person would be disabled under the Commissioner's Medical-Vocational Guidelines

7

Miller

(the "grids") at age 55, prior to reaching that age there were jobs the person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 735).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence.

Although the plaintiff submitted a large amount evidence relating to a heart condition, almost all of the treatment took place prior to the time she stopped working in January, 2000. Her cardiologist, Dr. John M. Johnstone, indicated in 1998 that the plaintiff had had several catheterizations, which showed "a borderline lesion in her left anterior descending coronary artery," but in order to determine "with certainty" whether further intervention was required, he performed an intravascular ultrasound which was "extremely reassuring showing no significant stenoses whatsoever." (Tr. 132). He felt "quite reassured about her cardiac status," and planned to continue with medical therapy and long-term risk factor management. (Id.). The only note from Dr. Johnstone after the alleged onset date is from April 24, 2000, at which time the plaintiff stated that she had no real cardiac complaints, her EKG was normal, and the physician assessed stable non-obstructive ischemic heart disease. (Tr. 131).

The plaintiff's primary allegation of disability related to low back pain, which she stated had become disabling in January, 2000 after attempting to move a patient in her job as a nurse's assistant. (Tr. 686-7). The plaintiff had some treatment from

8

her family physician, Dr. Karen Saylor, and her chiropractor, Dr. Chris Sipple, who referred her to a neurosurgeon, Dr. William Brooks. Dr. Brooks examined the plaintiff on February 11, 2000, and reviewed a lumbosacral MRI which the radiologist had interpreted as showing degeneration and some bulging. (Tr. 298,326). Dr. Brooks felt the MRI was essentially within normal limits with the exception of disc degeneration at L5-S1 and a "minor, nonconsequential bulge" of the disc.(Tr. 299, 454). His examination showed a restricted range of motion, but otherwise was normal. (Id.). He assessed a chronic lumbosacral strain associated with disc degeneration, and concluded that no surgical intervention would be helpful. (Id.). He suggested that she continue to see Dr. Sipple until receiving maximum chiropractic adjustment, and see Dr. Travis Jackson for an impairment/disability rating. (Id.).

Dr. Jackson examined the plaintiff on March 1, 2000, and also reviewed the MRI, which he concluded showed no evidence of frank herniation or nerve root impingement. (Tr. 294). His examination showed tenderness to palpation in the lower lumbosacral region, a diminished range of motion, and only partial deep knee bending, but that reflexes and motor examination were normal. (Tr. 295). Dr. Jackson assessed chronic low back pain with evidence of degenerative disc changes, and assessed a five percent impairment. (Id.). He imposed "permanent restrictions" of no lifting above 15 pounds and no repetitive bending, twisting, stooping, or lifting. (Id.).

9

Both Dr. Saylor and Dr. Sipple, the chiropractor, had, meanwhile, issued opinions that the plaintiff was totally disabled from any type of activity (Tr. 296-7, 325), although Dr. Saylor later issued another, somewhat inconsistent, opinion on June 13, 2000. She indicated that her patient had both good and bad days, and was feeling worse lately, but the only physical findings noted were some swelling of the feet and tenderness to palpation over the low back area. She was neurologically intact. (Tr. 328). Dr. Saylor than asserted, apparently incorrectly, that both Dr. Brooks and Dr. Jackson had told the plaintiff that she would not be able to lift over 10 to 15 pounds and could do no repetitive bending, pulling, "etc." (Id.).

Dr. Kenneth Phillips, a state agency physician, reviewed the record on August 8, 2000, and concluded that the plaintiff could perform "medium" level lifting with occasional climbing, stooping, and crawling. (Tr. 341-8). He stated in his rationale that Dr. Jackson's restrictions appeared to be excessive in view of the findings reported. (Tr. 349-50).[1]

Dr. Saylor completed a physical residual functional capacity assessment on March 26, 2001 indicating that the plaintiff could lift less than 10 pounds, could stand and walk less than two hours in an eight-hour day, could sit for less than six hours in an eight-hour day, had a limited ability to push and pull with both arms and legs, could never crawl, could occasionally climb, kneel, and crouch, had limitations on

---

[1]Another state agency source had completed a similar assessment, but this report is unsigned. (Tr. 304-9, 333-5).

10

reaching and handling, as well as exposure to vibration, humidity, wetness, hazards, and fumes, chemicals, odors, and gases (due to coronary artery disease). (Tr. 385-8). However, the rationale given is somewhat questionable in that Dr. Saylor cited a "herniated disc" as the cause of the plaintiff's back pain. (Tr. 386). As previously noted, the radiologist interpreting the MRI, as well as Dr. Brooks and Dr. Jackson, did not find any disc herniation. She did not give a specific reason for limiting the plaintiff more than Dr. Jackson, whom she had previously cited.

Dr. Kenneth Graulich, also a neurologist, examined the plaintiff on June 4, 2001, and also reviewed records from Doctors Brooks, Jackson, and Saylor. (Tr. 418-19).[2] Dr. Graulich noted that the plaintiff was walking with a limp, reportedly due to left buttock pain, but her tone, bulk, sensation, and reflexes were all normal, there was no spasm, and a straight leg raising test were negative in the seated position, although they were positive supine. (Tr. 419). Some testing was positive for symptom magnification, but Dr. Graulich did not judge this to be "severe." (Id.). His

_____

[2]The plaintiff reported having a "mini-stroke" in December 2000, but soon after stated that her only residual problem was tingling in the left arm. (Tr. 418). Records from Dr. Saylor and from the Rockcastle County Hospital show that the plaintiff was evaluated for headache, and tingling of the left arm and left side of the face, in December, 2000, but a CT scan of the head and a carotid sonogram were within normal limits, and she was assessed as having a "transient ischemic attack." (Tr. 400, 402, 415, 469). Dr. Saylor prescribed a medication called Aggrenox, but the plaintiff complained that it made her heart race and her chest arm hurt, and, after an EKG was normal, Dr. Saylor concluded that she should discontinue this medication and take aspirin. (Tr. 407-8, 415). A transient ischemic attack "represents symptoms of cerebral ischemia (decreased oxygen supply) that clear within 24 hours." 5 Ausman & Snyder's Medical Library (Lawyer's Edition 1990), Section 6.6.

impression was of mechanical low back pain syndrome, due to degenerative osteoarthritis without a more specific condition such as a herniated disc. (Id.). He doubted that the plaintiff could do more than sedentary to light labor, although with rehabilitation and good motivation and effort most patients could eventually do medium labor. In any case, he prepared a physical residual functional capacity assessment form indicating that the plaintiff could perform light level work, with standing and walking up to six hours and sitting up to six hours in an eight-hour day, no "extremely heavy" pushing and pulling with the upper extremities, and occasional climbing, balancing, kneeling, crouching, and crawling. (Tr. 420-2).

Another physical examination was attempted by Dr. Bobby J. Kidd on June 14, 2001, and produced largely normal findings apart from a limitation to 45 degrees and forward flexion. (Tr. 424-7). Dr. Kidd, however, declined to prepare a functional capacity assessment, stating that the plaintiff resisted attempts to lift items because lifting was "proscribed by Dr. Brooks." (Tr. 434).

Dr. Christa U. Muckenhausen, a neurologist, also conducted an evaluation in July, 2001, and concluded that the plaintiff could lift less than 10 pounds and engage in less than full-time sitting and standing. (Tr. 439-44).

Dr. Saylor noted at one point that there were no office visits by the plaintiff between June 22, 2001 and April 25, 2002. (Tr. 130). In August, 2002, shortly before the end of the period in question, Dr. Saylor summarized the plaintiff's problems as including "non-critical" coronary artery disease, hypertension,

12

menopause, mixed hyperlipidemia, plantar fasciitis, fibrocystic breast disease, and gastroesophageal reflux. (Tr. 668). Her most significant problem was her back, which, according to Dr. Saylor, made her "incapable of gainful employment with her permanent restrictions." (Id.). Apparently, from the context given in the note, these "permanent restrictions" were the ones imposed by Dr. Jackson. (Id.). At an office visits the same month, the main concern appeared to be gastritis, which was improved by taking Zantac and discontinuing Celebrex. (Tr. 667). Finally, Dr. Saylor wrote a note on her prescription had dated December 2, 2002 saying that the plaintiff's medical problems "prohibit employment." (Tr. 679).

The ALJ rejected the opinion of Dr. Muckenhausen as not being supported by substantial evidence. (Tr. 29). Since Dr. Muckenhausen was a one-time examiner, whose opinion was offset by the equally-placed Dr. Graulich, this determination is supported by substantial evidence. Dr. Saylor's opinion that the plaintiff was disabled was reasonably rejected as being conclusory, and as containing certain inconsistencies, as well as being based partially on the opinion of the chiropractor, Dr. Sipple. (Id.).

The plaintiff argues on appeal that it was error to reject the opinion of Dr. Saylor and Dr. Sipple. Since Dr. Sipple was a chiropractor, he is not considered an acceptable medical source under the Commissioner's regulations. Walters v. Commissioner of Social Security, 127 F.3d 525, 530 (6th Cir. 1997); 20 C.F.R. Sections 404.1513; 416.913 (2005). The ALJ was also not bound to accept a

13

vocational opinion of disability from Dr. Saylor, since this conclusion was outside of her area of expertise. As previously noted, Dr. Saylor did complete a functional capacity assessment in March, 2001, that gave specific restrictions, but given that this was at least partially based on the physician's apparent belief that the plaintiff had a herniated disc, substantial evidence supports the ALJ's determination that there were not sufficient laboratory or clinical findings to support Dr. Saylor's conclusion.

Dr. Graulich, in addition to examining the plaintiff, had records from Dr. Brooks and Dr. Jackson, as well as some records from Dr. Saylor. The ALJ's functional capacity finding is consistent with Dr. Graulich, with the exception of his restriction to occasional balancing. However, the Dictionary of Occupational Titles (DOT) states that at least two of the jobs identified by the VE, cashier and counter clerk, do not require balancing. See DOT Sections 211.462-010; 249.362-010. The hypothetical factors also included restrictions on environmental factors which were cited by Dr. Saylor as being related to the plaintiff's "non-critical" coronary artery disease. Therefore, it is supported by substantial evidence.[3]

---

[3]The plaintiff also cites Dr. Saylor's opinion given on a mental medical source statement that she would have no useful ability to perform activities within a schedule, maintain regular attendance, be punctual, complete a normal workday or workweek, or perform at a consistent pace. (Tr. 389-90). The physician stated that the restrictions would be due to her physical problems, however, and never diagnosed or treated any discrete mental impairment. Nor did the plaintiff allege a mental impairment.

14

Miller

The plaintiff also argues on appeal that the ALJ did not properly evaluate her subjective complaints of pain, but an examination of the administrative decision shows that it was adequate in this regard.  (Tr. 30). <u>Duncan v. Secretary of Health and Human Services</u>, 801 F.2d 847, 852-3 (6th Cir. 1986).

The decision will be affirmed.

This the _____ day of August, 2006.

G. WIX UNTHANK
SENIOR JUDGE

15